J-A16034-17

2017 PA Super 301

COMMONWEALTH OF PENNSYLVANIA,   :   IN THE SUPERIOR COURT OF
       :             PENNSYLVANIA
        Appellee        :
                       :
            v.           :
                       :
JEREMY MELVIN,            :
                       :
        Appellant      :    No. 1438 WDA 2016

Appeal from the Judgment of Sentence August 19, 2016
in the Court of Common Pleas of Mercer County
Criminal Division at No(s): CP-43-CR-0001959-2003

BEFORE:   STABILE, J., FORD ELLIOTT, P.J.E., and STRASSBURGER,[*] J.

OPINION BY STRASSBURGER, J.:         **FILED SEPTEMBER 20, 2017**

Jeremy Melvin (Appellant) appeals from the August 19, 2016 judgment of sentence imposed following a resentencing hearing pursuant to **Commonwealth v. Batts**, 66 A.3d 286 (Pa. 2013) ("**Batts I**"). We affirm.

> On November 10, 2003, [A]ppellant was arrested and charged with homicide, aggravated assault, robbery, escape, and other related offenses involving an incident at the George Junior Republic, a residential treatment facility for at-risk youth located in Grove City, Pennsylvania. [Appellant had been placed at this facility after he was adjudicated delinquent.] Appellant and Anthony Machicote ("Machicote") had conspired to escape the facility by overpowering a guard. During the early morning hours of November 10, 2003, Machicote called the night manager ("the victim") to his room. While the victim spoke with Machicote, [A]ppellant put the victim in a chokehold. Appellant and Machicote secured the victim, put a sock in his mouth, and then tied a sheet around his mouth. After taking the victim's car keys

---

[*] Retired Senior Judge assigned to the Superior Court.

and wallet, they fled from the facility. The victim died as a result of suffocation.

Subsequently, both men surrendered and made inculpatory statements to the police. A hearing was held on August 4, 2004 on [A]ppellant's motion to suppress; and thereafter, the motion was denied. On October 19, 2004, [A]ppellant entered a guilty plea to murder in the second degree, and the remaining charges were *nolle prossed* pursuant to a plea agreement. On January 7, 2005, [A]ppellant was sentenced to life imprisonment without the possibility of parole and to pay costs and fines. Appellant did not file post-sentence motions or a direct appeal.

On January 23, 2006, [A]ppellant, acting *pro se*, filed a timely [Post Conviction Relief Act (PCRA)] petition. Stephen G. Delpero, Esq., was appointed as counsel and an amended PCRA petition was filed. A hearing was held on May 30, 2006 before the Honorable Thomas Dobson. Thereafter, the PCRA court denied the petition on May 31, 2006. A timely notice of appeal was filed June 30, 2006, and [A]ppellant was ordered to file a concise statement of matters complained of on appeal. Appellant complied with the court's order.

*Commonwealth v. Melvin*, 928 A.2d 1126 (Pa. Super. 2007) (unpublished memorandum at 1-2). On April 24, 2007, a panel of this Court affirmed the denial of Appellant's PCRA petition. *Id.* Appellant did not seek review by our Supreme Court.

On July 8, 2010, Appellant filed a second PCRA petition, which was denied by the trial court without a hearing. No appeal followed. Appellant's third PCRA petition was filed on May 23, 2012. Shortly thereafter, on June 25, 2012, the Supreme Court of the United States issued its opinion in *Miller v. Alabama*, wherein the Court held that "the Eighth Amendment

forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." 567 U.S. 460, 479 (2012).

On September 30, 2013 [the PCRA c]ourt granted [Appellant's] third PCRA petition on the grounds the sentence was unlawful in light of *Miller*[.]

The Commonwealth took an appeal from that order.

On October 30, 2012 the Supreme Court of Pennsylvania in *Commonwealth v. Cunningham*, 81 A.3d 1 ([Pa.] 2013) ruled that *Miller* was not retroactive.

The Commonwealth withdrew its appeal.

On December 18, 2013 the Commonwealth was granted leave to reinstate its appeal.

On July 22, 2014 the Superior Court of Pennsylvania reversed [the PCRA c]ourt's order of September 20, 2013, at [*Commonwealth v. Melvin*, 105 A.3d 798 (Pa. Super. 2014) (judgment order)].

[Appellant] filed a petition for allowance of appeal. It was denied by the Supreme Court of Pennsylvania on December 11, 2014. [*Commonwealth v. Melvin*, 104 A.3d 524 (Pa. 2014)].

On January 25, 2016 the United States Supreme Court in *Montgomery v. Louisiana*, — US —, [136 S.Ct. 718] (2016), held that *Miller* [] was retroactive.

On March 18, 2016[, Appellant] filed a motion for leave to amend his PCRA petition in light of the holding in *Montgomery*.

At a status conference on May 5, 2016 [the PCRA c]ourt granted the request to amend, vacated [Appellant's] sentence and scheduled sentencing[.]

On August 19, 2016[, the PCRA c]ourt sentenced [Appellant] to a term of imprisonment of not less than 30 years nor more than life.

A post-sentence motion was filed. It was denied without a hearing on August 30, 2016. This appeal followed.

PCRA Court Opinion, 11/1/2016, at 3-4 (unnecessary capitalization omitted).

Both Appellant and the PCRA court have complied with the mandates of Pa.R.A.P. 1925. Appellant raises the following issues for this Court's review, which we have renumbered for ease of disposition.

> 1. Did the [PCRA] court impose an illegal sentence when it acted without any statutory authority?
>
> 2. Did the [PCRA] court impose an illegal sentence by not sentencing [Appellant] for the lesser included charge of third degree murder or the underlying felony of robbery?
>
> 3. Did the [PCRA] court err by ruling the *ex post facto* clause of our Constitutions prevented him from considering current Sentencing Guidelines to an offense from 2003?
>
> 4. Did the [PCRA] court abuse its discretion when it denied [Appellant's] request for additional financial aid even though he showed the material's content, its relevance and its cost?
>
> 5. Did the [PCRA] court err by ruling that witnesses could give "victim impact" evidence without satisfying the statutory definition of a "victim"[?]
>
> 6. Did the [PCRA] court err in allowing character evidence to be admitted through opinion and not reputation evidence?

Appellant's Brief at 6 (PCRA court answers omitted).

In his first two issues on appeal, Appellant presents a challenge to the legality of his sentence, arguing that the PCRA court had no valid statutory authority to impose a term-of-years sentence with a maximum term of life

imprisonment at his resentencing and, because the crime at issue here was committed before June 24, 2012[1], the only possible legal sentence is "on the lesser included offense of third[-]degree murder or the underlying felony of robbery." Appellant's Brief at 25-49. "When reviewing the legality of a sentence, our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Brown***, 159 A.3d 531, 532 (Pa. Super. 2017) (citation omitted).

By way of background, in 2013, our Supreme Court decided ***Batts I***, which addressed the effect of the holding in ***Miller*** on incarcerated Pennsylvanians serving mandatory life sentences without the possibility of parole (LWOP) for homicides committed while those persons were juveniles (so-called "juvenile lifers"). Applying this new precedent, the Court in ***Batts I*** held that

> [the] argument that the entire statutory sentencing scheme for first-degree murder has been rendered unconstitutional as applied to juvenile offenders is not buttressed by either the language of the relevant statutory provisions or the holding in ***Miller***. Section 1102, which mandates the imposition of a life sentence upon conviction for first-degree murder, ***see*** 18 Pa.C.S. § 1102(a), does not itself contradict ***Miller***; it is only when that mandate becomes a sentence of [LWOP] as applied to a juvenile offender—which occurs as a result of the interaction between Section 1102, the Parole Code, see 61 Pa.C.S. § 6137(a)(1), and the Juvenile Act, see 42 Pa.C.S. § 6302—that ***Miller***'s proscription squarely is triggered. [] ***Miller*** neither

_____

[1] As discussed below, June 24, 2012 is the operative date for the new juvenile sentencing guidelines set in place after the Supreme Court's decision in ***Miller***.

> barred imposition of [an LWOP] sentence on a juvenile categorically nor indicated that a life sentence with the possibility of parole could never be mandatorily imposed on a juvenile. Rather, **Miller** requires only that there be judicial consideration of the appropriate age-related factors set forth in that decision prior to the imposition of a sentence of life imprisonment without the possibility of parole on a juvenile.

**Batts I**, 66 A.3d at 296. The Court recognized the difference in potential penalty between juvenile offenders like Batts, who was tried and convicted of first-degree murder prior to the issuance of **Miller**, and those who committed offenses after the Supreme Court's decision in **Miller**.

> As to the former, it is our determination here that they are subject to a mandatory maximum sentence of life imprisonment as required by Section 1102(a), accompanied by a minimum sentence determined by the common pleas court upon resentencing. Defendants in the latter category are subject to high mandatory minimum sentences and the possibility of life without parole, upon evaluation by the sentencing court of criteria along the lines of those identified in **Miller**.

**Id.** at 297.

Thus, the Court remanded Batts' case for resentencing and instructed the trial court to consider the non-inclusive list of factors outlined in **Miller** before determining whether to impose upon Batts an LWOP sentence.

Following a hearing, Batts was resentenced to LWOP. He took a second appeal to this Court, which affirmed his new judgment of sentence. Our Supreme Court granted Batts' petition for allowance of appeal to address Batts' contention, *inter alia*, that the Court should exercise "its authority under the Pennsylvania Constitution to promulgate procedural safeguards [for juveniles convicted of first- and second-degree homicide]

including (a) a presumption against juvenile [LWOP sentences]; (b) a requirement for competent expert testimony; and (c) a "beyond a reasonable doubt" standard of proof[.]" *Commonwealth v. Batts*, — A.3d —, 2017 WL 2735411 at *11 (Pa. 2017) (*Batts II*).

In June of 2017, while the instant case was pending, our Supreme Court issued its opinion in *Batts II*. The Court noted that,

> [d]espite the passage of four years since we issued our decision in *Batts I*, the General Assembly has not passed a statute addressing the sentencing of juveniles convicted of first-degree murder pre-*Miller*, nor has it amended the pertinent provisions that were severed in *Batts I*. As we have previously stated, the General Assembly is quite able to address what it believes is a judicial misinterpretation of a statute, and its failure to do so in the years following the *Batts I* decision gives rise to the presumption that the General Assembly is in agreement with our interpretation.

*Batts II*, 2017 WL 2735411 at *25 (footnotes, some citations and quotation marks omitted).

However, addressing the specific issues raised by Batts, the Court determined that, "in Pennsylvania, a faithful application of the holding in *Miller*, as clarified in *Montgomery*,[2] requires the creation of a presumption against sentencing a juvenile offender to life in prison without the possibility of parole." *Batts II*, 2017 WL 2735411 at *31. The Court

---

[2] As the Court explained, *Montgomery* "means that only 'the rarest of juvenile offenders' are eligible to receive a sentence of [LWOP]. Only in 'exceptional circumstances' will [LWOP] be a proportionate sentence for a juvenile." *Batts II*, 2017 WL 2735411 at *31 (citations and footnote omitted).

then placed the burden of rebutting this presumption on the Commonwealth, concluding as follows.

> To rebut the presumption, the Commonwealth has the burden to prove, beyond a reasonable doubt, that the juvenile offender is permanently incorrigible and thus is unable to be rehabilitated. Consistent with the mandate of **Miller** and **Montgomery**, for a life-without-parole sentence to be constitutionally valid, the sentencing court must find that the juvenile offender is permanently incorrigible and that rehabilitation would be impossible. The Commonwealth's evidence and the sentencing court's decision must take into account the factors announced in **Miller** and section 1102.1(d) of the Crimes Code. Even if the Commonwealth satisfies its burden of proof, the sentencing court is not required to impose a life-without-parole sentence upon a juvenile offender.

**Batts II**, 2017 WL 2735411 at *37–38.

Finally, and of note with respect to the current appeal, our Supreme Court reaffirmed the sentencing scheme applicable to juvenile offenders for whom the sentencing court determines LWOP sentences are inappropriate (*i.e.*, imposition of a term-of-years to life sentence as discussed above) and specifically "instruct[ed] sentencing courts to look to the mandatory minimum sentences set forth in section 1102.1(a) for guidance in setting a minimum sentence for a juvenile convicted of first-degree murder prior to **Miller**." **Batts II**, 2017 WL 2735411 at *24 n.17.

In creating the aforementioned sentencing scheme, the Court expressly rejected the claim of Batts and his *amici*, which Appellant herein now argues, that there is no legislatively authorized sentence for juveniles convicted of first-degree murder prior to 2012. **Id.** at *18-22. The Court also

rejected Batts' contentions that the forty year maximum penalty for third-degree murder is the only legal alternative and that severance of the statute is impossible. *Id.* at \*23-27. Importantly, the Court held, *inter alia*, that a trial court, in resentencing a juvenile offender convicted prior to **Miller**, was constitutionally permitted to impose a minimum term-of-years sentence and a maximum sentence of life imprisonment, thus "exposing these defendants to parole eligibility upon the expiration of their minimum sentences"[3]. **Batts II**, 2017 WL 2735411 at \*21. We are bound by our Supreme Court's decision. Thus, we disagree with Appellant that his resulting thirty-years-to-life sentence is illegal and, as a result, we hold that he is not entitled to relief on his first two claims.

In his third issue, Appellant argues that the trial court erred in determining that the *ex post facto* clause of the Pennsylvania and United States Constitutions barred application of Appellant's sentencing guidelines.[4] Appellant's Brief at 66-72. Although we agree with Appellant that the court's PCRA *ex post facto* analysis is in error, in this case, such error does not require remand.

> The sentencing guidelines provide sanctions proportionate to the severity of the crime and the severity of the offender's prior conviction record. This establishes a sentencing system

---

[3] Batts was sentenced for the crime of first degree murder, while Appellant herein pled guilty to murder in the second degree. However, we discern no difference that would place Appellant's claim outside of the **Batts** analysis.

with a primary focus on retribution, but one in which the recommendations allow for the fulfillment of other sentencing purposes including rehabilitation, deterrence, and incapacitation. 204 Pa. Code § 303.11(a).

\* \* \*

Moreover, the guidelines set forth a framework, to be considered by the sentencing court in fashioning an individualized sentence. *See Commonwealth v. Walls*, [] 926 A.2d 957, 962–963 (2007); *see also* 42 Pa.C.S. §§ 2154(a), 9721; *see generally* 204 Pa. Code §§ 303.1–.18(c). To be clear, while the court must consider the guidelines, the court is also afforded broad discretion in sentencing matters, as it is in the best position to evaluate the individual circumstances before it. *Walls*, 926 A.2d at 961. Thus, the guidelines "merely inform the sentencing decision." *Id.* at 962.

*Commonwealth v. Fortson*, — A.3d. —, 2017 PA Super 162 at *6 (Pa. Super. 2017).

In response to *Miller* and the codification of section 1102.1 (setting forth the applicable sentences for murder, murder of an unborn child, and murder of a law enforcement officer committed by persons under the age of 18 where those convictions occurred after June 24, 2012), the Sentencing Commission created a basic sentencing matrix specifically for juvenile first- and second-degree homicide offenders where the offense occurred **after** June 24, 2012. *See* 204 Pa. Code § 303.16(b) (emphasis added).

Because Appellant was 16 years old at the time of the murder at issue and had a prior record score of zero, using the new matrix, Appellant's guidelines under subsection 303.16(b) called for a standard range sentence of 360 to 624 months. *See* Appellant's Brief at 67. However, because the

offense at issue here occurred **prior** to June 24, 2012, the subsection 303.16(b) guidelines are inapplicable to Appellant. Rather, as discussed above, in **Batts II** our Supreme Court mandated that where, as here, the lower court determines that a juvenile LWOP sentence is inappropriate for an offender who was convicted of homicide **before Miller**, the court must, in fashioning a term-of-years-to-life sentence, consider the sentencing requirements codified at 18 Pa.C.S. § 1102.1, which provides, in relevant part, as follows.

> **(c) Second degree murder.--**A person who has been convicted after June 24, 2012, of a murder of the second degree, second degree murder of an unborn child or murder of a law enforcement officer of the second degree and who was under the age of 18 at the time of the commission of the offense shall be sentenced as follows:
>
> > (1) A person who at the time of the commission of the offense was 15 years of age or older shall be sentenced to a term of imprisonment the minimum of which shall be at least 30 years to life.

18 Pa.C.S. § 1102.1. Here, the PCRA court found persuasive the "logic" of subsection 1102.1(c)(1) and imposed a thirty-year-to-life sentence. N.T., 8/19/2016, at 85. As this sentence is compliant with subsection 1102.1(c)(1) and **Batts II**, we find no reason to disturb it.[5]

---

[5] The record is unclear as to why the lower court generated a subsection 303.16(b) guideline form for Appellant when this case did not meet the criteria under that subsection. However, we note that Appellant's thirty-years-to-life sentence **is** a standard range sentence according to those guidelines.

- 11 -

Appellant next claims that the PCRA court abused its discretion in denying him additional funds to hire for his resentencing the same expert who evaluated Appellant prior to his guilty plea. Appellant's Brief at 50-61. Appellant argues that the court's refusal to grant him additional funds made it impossible for him to make a persuasive argument with respect to the factors outlined in **Miller**[6] that the United States Supreme Court has identified as relevant considerations for resentencing of juvenile homicide offenders to LWOP sentences. **Id.** at 53-55.

_____

[6] As the Court in **Batts II** explained,

> The **Miller** Court concluded that sentencing for juveniles must be individualized. This requires consideration of the defendant's age at the time of the offense, as well as "its hallmark features," including:
>
>> immaturity, impetuosity, and failure to appreciate risks and consequences[;] ... the family and home environment that surrounds him—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional[;] ... the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him[;] ... that he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys[;] ... [and] the possibility of rehabilitation ... when the circumstances [*i.e.* (the youthfulness of the offender)] most suggest it.

**Batts II**, 2017 WL 2735411 at *14–15 (citations omitted).

- 12 -

> It is well-established that indigent defendants have a right to access the same resources as non-indigent defendants in criminal proceedings. The state has an affirmative duty to furnish indigent defendants the same protections accorded those financially able to obtain them. Procedural due process guarantees that a defendant has the right to present competent evidence in his defense, and the state must ensure that an indigent defendant has fair opportunity to present his defense.
>
> However, [t]he provision of public funds to hire experts to assist in the defense against criminal charges is a decision vested in the sound discretion of the court and a denial thereof will not be reversed absent an abuse of that discretion.

*Commonwealth v. Konias*, 136 A.3d 1014, 1019 (Pa. Super. 2016) (citations and quotation marks omitted).

In *Batts I*, which was the prevailing law at the time of Appellant's resentencing, the Court held that the sentencing court "should consider" the *Miller* factors in determining whether a juvenile homicide offender should be subjected to an LWOP sentence; however, the Court was silent as to both the applicable burden of proof and whether expert testimony was necessary to make a *Miller* argument. *Batts I*, 66 A.3d 286 at 297.

In *Batts II*, our Supreme Court clarified the applicable sentencing procedure, holding as follows.

> Pursuant to our consideration of the attendant due process concerns and the definitive language used by the Supreme Court, we conclude that to overcome the presumption against the imposition of a sentence of life without parole for a juvenile offender, the Commonwealth must prove that the juvenile is constitutionally eligible for the sentence beyond a reasonable doubt. In an effort to satisfy this burden, the Commonwealth may present evidence relating to the factors announced in *Miller* and the factors appearing in section 1102.1(d).

Consistent with the requirements of due process and section 1102.1(b), if the Commonwealth seeks to have the sentencing court impose a sentence of life without parole on a juvenile offender, it must provide reasonable notice to the defendant prior to the sentencing hearing.

*Batts II*, 2017 WL 2735411 at *34 (citations omitted). Further, with respect to the necessity of expert testimony, the Court opined,

[t]here is an undeniable appeal to Batts' contention that expert testimony is necessary for a court to determine that a juvenile offender is permanently incorrigible. We decline, however, to go so far as to hold that expert testimony is constitutionally required to rebut the presumption against the imposition of a sentence of [LWOP]. Expert testimony is admissible in Pennsylvania if the information is outside of the common knowledge of the factfinder and the testimony of an expert, so qualified based upon his or her "knowledge, skill, experience, training or education," will aid in the understanding of the fact at issue and the expert utilized a generally accepted methodology. The necessity thereof is thus within the discretion of the sentencing court.

Given the presumption against [LWOP] and the Commonwealth's burden beyond a reasonable doubt to rebut the presumption, it is difficult to conceive of a case where the Commonwealth would not proffer expert testimony and where the sentencer would not find expert testimony to be necessary. Nonetheless, whether expert testimony is required to rebut the presumption against permanent incorrigibility beyond a reasonable doubt will be determined on a case-by-case basis by the sentencing court.

*Batts II*, 2017 WL 2735411 at *34 (citations omitted).

While we recognize that the *Batts II* structure was not in place at the time of Appellant's sentencing, we find no abuse of the court's discretion. It is well-settled that "an indigent defendant does not have the right to choose his own expert or receive funds to hire his own. [Where an indigent

- 14 -

defendant] asked for experts and was given them by the trial court, the fact they were not the ones he would have chosen does not render them less effective or independent in their evaluation." ***Commonwealth v. Wholaver***, 989 A.2d 883, 895 (Pa. 2010) (citations omitted). The ***Batts*** decisions make clear that, while the court must consider the ***Miller*** factors in cases where the Commonwealth is attempting to meet its burden of overcoming the presumption against juvenile LWOP sentences, expert testimony is not constitutionally required. ***Batts II***, 2017 WL 2735411 at*14–15.

Moreover, the PCRA court recognized that LWOP sentences for juvenile offenders are "appropriate in very limited circumstances" that **did not apply to this case**. N.T., 8/19/2016, at 46. Thus, even if the PCRA court's decision regarding expert funds was in error, the issue is now moot because the court ruled that an LWOP sentence was inappropriate for Appellant. We note that Appellant does not challenge the discretionary aspects of his sentence with respect to the application of various sentencing factors outlined in the Sentencing Code, but focuses instead on the court's failure to provide him funds for an expert of his choice. For the aforementioned reasons, this claim fails.

Finally, Appellant argues that the PCRA court erred in holding that the court committed evidentiary errors with respect to the character and victim impact evidence admitted at his sentencing. First, Appellant contends that

the court erred in admitting the testimony of Commonwealth witnesses Robert Lanschak, the victim's direct supervisor, and Tom Jones, the human resources director at George Junior Republic, arguing that neither man fits the definition of "victim" under the Crime Victims Act, 18 Pa.C.S. § 11.103[7]. Appellant's Brief at 73-75.

Mr. Lanschak, who discovered the victim's body, testified as to the personal impact of the discovery, N.T., 8/19/2016, at 12-14, while Mr. Jones

---

[7] "Victim" is defined by the Crime Victims Act as follows:

(1) A direct victim.

(2) A parent or legal guardian of a child who is a direct victim, except when the parent or legal guardian of the child is the alleged offender.

(3) A minor child who is a material witness to any of the following crimes and offenses under 18 Pa.C.S. (relating to crimes and offenses) committed or attempted against a member of the child's family:

    Chapter 25 (relating to criminal homicide).

    Section 2702 (relating to aggravated assault).

    Section 3121 (relating to rape).

(4) A family member of a homicide victim, including stepbrothers or stepsisters, stepchildren, stepparents or a fiance, one of whom is to be identified to receive communication as provided for in this act, except where the family member is the alleged offender.

18 P.S. § 11.103.

explained the subsequent remedial measures George Junior Republic took to insure such an incident did not happen again, and the effect of the incident on other employees. *Id.* at 19-21. Although neither Mr. Lanschak nor Mr. Jones is a "victim" as defined by the Act, the sentencing court had broad discretion to consider their testimony. It is well-settled that,

> prior to imposing sentence [a] sentencing judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come.
>
> Nevertheless, the discretion of a sentencing judge is not unfettered; a defendant has the right to minimal safeguards to ensure that the sentencing court does not rely on factually erroneous information, and any sentence predicated on such false assumptions is inimicable [*sic*] to the concept of due process. Obviously, the probability of receiving accurate presentence information is considerably enhanced when the defendant has an opportunity to review and dispute the facts and allegations available to the sentencing judge.

*Commonwealth v. Rhodes*, 990 A.2d 732, 746 (Pa. Super. 2009) (internal citations and quotation marks omitted).

Here, Appellant was present for the testimony of Mr. Lanschak and Mr. Jones and his attorney availed himself of the opportunity to cross-examine both individuals. Given that impact on the community is a relevant sentencing consideration, *see e.g. Commonwealth v. duPont*, 730 A.2d 970, 986 (Pa. Super. 1999) (holding trial court appropriately considered hearsay statements in letter from police chief of the neighborhood in which the crimes occurred, as impact on the community is an appropriate

sentencing consideration), Appellant's argument that the testimony of Mr. Lanschak and Mr. Jones was improper is devoid of merit.

Next, Appellant argues that the court erred when it allowed two witnesses to testify at sentencing that the victim was a "good employee." Appellant's Brief at 62-63. Appellant contends that this character evidence, admitted as both witness's personal opinion as opposed to their understanding of the victim's reputation in his community, was erroneously admitted. *Id.* Appellant's argument is focused on whether this evidence constitutes proper character testimony under Rule of Evidence 405.[8] We disagree. The testimony elicited at the sentencing hearing makes clear that the witnesses' opinions as to the victim being a good employee were not being offered as character evidence but to add context to the witness's individual impact statements. To the extent that the evidence was improper, Appellant offers no argument that the PCRA court relied upon those limited statements in fashioning his sentence. Accordingly, we hold that this issue is without merit.

For all of the forgoing reasons, we affirm Appellant's judgment of sentence.

---

[8] The Rule provides that "[w]hen evidence of a person's character or character trait is admissible, it may be proved by testimony about the person's reputation. Testimony about the witness's opinion as to the character or character trait of the person is not admissible." Pa.R.E. 405.

J-A16034-17

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/20/2017