J-A15034-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DERRICK HARVEY | : | |
| | : | |
| Appellant | : | No. 1217 EDA 2020 |

Appeal from the Judgment of Sentence Entered September 19, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0307631-1998

BEFORE: BOWES, J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.: Filed: October 7, 2021

Derrick Harvey ("Harvey") appeals from the judgment of sentence imposed following his resentencing under **Montgomery v. Louisiana**, 577 U.S. 190 (2016)[1] for his convictions of one count each of first-degree murder, robbery, possessing instruments of crime, aggravated assault, and attempted murder.[2] Harvey was originally sentenced in 1999, resentenced in 2003, and was subsequently granted relief under the Post Conviction Relief Act

---

[1] In **Montgomery**, the United States Supreme Court held that state courts are required to grant retroactive effect to new substantive rules of federal constitutional law. **Montgomery**, 577 U.S. at 208-09. In **Miller v. Alabama**, 567 U.S. 460 (2012), the Supreme Court deemed unconstitutional mandatory sentences of life in prison without the possibility of parole for offenders like Harvey, who were under eighteen years of age at the time of their crimes.

[2] 18 Pa.C.S.A. §§ 2502(a), 3701(a)(1), 907, 2702(a)(2).

("PCRA").[3] Thereafter, he was resentenced to serve the instant sentence (the

"***Montgomery*** Resentencing"). We affirm.

Our Supreme Court previously summarized the factual background

underlying Harvey's convictions as follows:

> On January 10, 1998, thirteen-year-old Charity Watkins [("Charity")] was in her home with her younger siblings, Sadee and Tiara, when her twenty-two-year-old brother Shawn Wilkins [("Shawn")], and her cousin, the sixteen-year-old [Harvey], entered the house and immediately went upstairs. Approximately thirty minutes later, Charity heard gunshots. She then walked halfway upstairs and brought Sadee, who had been sitting on the stairs, back to the living room. Subsequently, [Harvey] appeared downstairs and, with a gun in each hand, ordered Charity upstairs to Shawn's bedroom. As Charity entered the room, she saw Shawn standing immobile in the corner near the door. Charity sat on the bed and watched [Harvey] go into Shawn's dresser and remove a box. After [Harvey] ordered Charity to lie on the bed, and she complied, he proceeded to shoot her three times, once each in the temple, the cheek, and the neck. Charity passed out and later awoke to find that [Harvey] had left the bedroom. After hearing someone knocking on the front door, Charity made her way downstairs where she met her cousin Joseph. She was later rushed in an ambulance to Children's Hospital of Philadelphia, where she remained for over two weeks. As a result of the shooting, Charity is blind in her left eye.
>
> … [W]hen the police arrived at the scene at approximately 4:30 p.m. on January 10, 1998, they discovered Shawn dead in the bedroom, surrounded by four fired .40-caliber cartridge cases and two fired .22-caliber cartridge cases. An autopsy of Shawn's body showed that Shawn had been shot six times, including three times in the head. The report concluded that, based on the lack of gunpowder stippling around Shawn's wounds, all six shots had been fired from a distance greater than three feet. A firearms expert's report showed that Shawn's wounds were caused by a .22–caliber gun and a .40–caliber gun, which was the same .40–

---

[3] 42 Pa.C.S.A. §§ 9541-9546.

caliber gun that had caused Charity's wounds. Although the police found a plastic bag containing nine packets of cocaine near the bed, they did not find any guns or money in or around the house.

Police Detective Joseph Bamberski of the Philadelphia Police Department … obtained a statement from [Harvey] between 1:55 a.m. and 3:00 a.m. on the morning of January 12, 1998, in which [Harvey] admitted shooting Shawn. … In his statement, [Harvey] described accompanying Shawn into Shawn's bedroom "so [that they] could take care of some business." [Harvey] stated that after he gave Shawn $125 in exchange for drugs, Shawn counted the money, put it in his pocket, and then allegedly hit [Harvey] because the amount was "a little off." According to [Harvey]'s statement, Shawn then took out his gun, placed it on the bed, and started walking toward [Harvey]. [Harvey] claimed that he then grabbed a different gun from the dresser, aimed it at Shawn, and told him to back up. [Harvey] maintained in his statement that he thought Shawn was going to reach for the gun on the bed and shoot him, so in self-defense[,] he shot Shawn three times in the head. [Harvey] also claimed that Charity came running up the stairs after he had shot Shawn, so he shot her once in the face and then laid her down on the bed. [Harvey] maintained that, when he left Shawn's house after the shooting, he only took with him the drugs that Shawn had given him, choosing to leave the $125 that he had exchanged for the drugs undisturbed in Shawn's pocket, and that he threw the gun he had used in the shootings into an alley on his way to a friend's house.

*Commonwealth v. Harvey*, 812 A.2d 1190, 1194-95 (Pa. 2002) (internal citations to record and footnote omitted).

In its Opinion, the *Montgomery* Resentencing court detailed the subsequent procedural history as follows:

[A]fter a waiver trial held before the Honorable Ricardo Jackson held [*sic*] in 1998, Judge Jackson found [Harvey] guilty of first[-]degree murder, attempted murder, robbery, aggravated assault, and possessing an instrument of crime, generally. On March 19, 1999, [Harvey] appeared before Judge Jackson for a penalty hearing. [Harvey] waived his right to have a jury decide the penalty to be imposed on the first[-]degree murder conviction. At the conclusion of the hearing Judge Jackson sentenced

[Harvey] to death after deciding that the three aggravating circumstances he found outweighed the single mitigating circumstance established by the evidence. Judge Jackson also imposed concurrent sentences of incarceration of ten to twenty years for attempted murder, ten to twenty years for robbery, and two to four years for possessing an instrument of crime.

Following the imposition of sentence, [Harvey] appealed to the Pennsylvania Supreme Court. On December 20, 2002, the Supreme Court affirmed [Harvey's] convictions but vacated the death sentence and remanded the matter for a new penalty hearing. [] *Harvey*, 812 A.2d [at] 1190 []. On March 28, 2003, [Harvey] received a life sentence from the Honorable Steven R. Geroff on the murder conviction.

On September 3, 2003, [Harvey] filed a timely *pro se* [PCRA P]etition … following which counsel was appointed to represent him. The matter was assigned to Judge Jackson for review and on May 25, 2005, Judge Jackson dismissed [Harvey]'s [P]etition without a hearing. [Harvey] appealed and on January 7, 2007, th[is] Court vacated Judge Jackson's [O]rder and remanded the matter because of procedural errors. ***Commonwealth v. Harvey***, 919 A.2d 971 (Pa. Super. 200[7]) ([unpublished memorandum]).

On remand, on October 9, 2007, Judge Jackson again denied [Harvey]'s request for PCRA relief. [Harvey] appealed and on February 13, 2009, th[is] Court affirmed the [O]rder dismissing [Harvey]'s PCRA [P]etition. ***Commonwealth v. Harvey***, 970 A.2d 468 (Pa. Super. 2009) ([unpublished memorandum]). On October 7, 2009, the Pennsylvania Supreme Court denied a [P]etition seeking allowance of appeal from the [O]rder affirming Judge Jackson's [O]rder denying PCRA relief. ***Commonwealth v. Harvey***, 982 A.2d 64 (Pa. 2009)[].

On August 7, 2012, [Harvey] filed another PCRA [P]etition. That was followed by the filing of several additional [P]etitions and the appointment of counsel. Th[e PCRA c]ourt was eventually assigned to review and rule upon that [P]etition. On September 19, 2018, th[e PCRA c]ourt granted the [P]etition and vacated [Harvey]'s sentence pursuant to the decisions of the United States Supreme Court in ***Miller*** … and ***Montgomery*** …. Th[e PCRA c]ourt then imposed sentences of twenty years to life imprisonment on the murder conviction[,] and a consecutive sentence of ten to twenty years' incarceration on the attempted

- 4 -

murder conviction.[4]  Verdicts without further penalty were imposed on the remaining convictions.

After being re-sentenced, [Harvey] filed an untimely post-sentence [M]otion and then an untimely appeal … that [Harvey] thereafter withdrew.  On October 10, 2019, [Harvey] filed a timely PCRA [P]etition after which th[e PCRA c]ourt granted the [P]etition and reinstated [Harvey]'s right to file post-sentence motions from the judgment of sentence entered on September 19, 2018. [Harvey] filed a post-sentence [M]otion on December 28, 2019. That [M]otion was denied on May 18, 2020, by operation of law. [Harvey] filed [a N]otice of [A]ppeal from that [O]rder as well as a court-ordered Pa.R.A.P. 1925(b) [Concise] Statement of [m]atters [complained of on appeal].

*Montgomery* Resentencing Court Opinion, 9/2/20, at 1-3 (footnote added).

Harvey raises the following issues for our review:

A.  Did the [trial] court violate [] Harvey's right to be free of double jeopardy and violate Pennsylvania's [S]entencing [C]ode by failing to properly give [] Harvey more than 20 years of time credit against his statutory-maximum sentence for attempted murder and then reimposing another statutory-maximum sentence on the same charge to run consecutively to a homicide sentence?

B.  Did the [trial] court impose a sentence based on a new rule of law that was judicially created, in violation of the separation of powers doctrine?  And was that sentence impermissibly applied retroactively?

Brief for Appellant at 4.

Harvey's claims challenge the legality of his sentence.  *See Commonwealth v. Seskey*, 170 A.3d 1105, 1107 (Pa. Super. 2017).  "When reviewing the legality of a sentence, our standard of review is *de novo* and

---

[4] Harvey was awarded credit for time served, which was credited against his murder sentence.  *See* JLSWOP Resentencing Order, 9/19/18.

- 5 -

our scope of review is plenary." ***Commonwealth v. Melvin***, 172 A.3d 14, 19 (Pa. Super. 2017) (citation omitted).

First, Harvey argues that the trial court erred by resentencing him to a prison term of twenty years to life for murder, and a consecutive term of ten to twenty years in prison for attempted murder, when he previously was sentenced to concurrent prison terms. ***See*** Brief for Appellant at 16-29. Harvey asserts that he had already served the maximum sentence for his attempted murder conviction at the time of his resentencing. ***Id.*** at 16-24. As a result, the resentencing court violated his double jeopardy rights when it imposed a new consecutive sentence for attempted murder. ***Id.*** Harvey claims that even if his double jeopardy rights were not violated, the resentencing court was nevertheless forbidden from imposing a consecutive sentence. ***Id.*** at 24-26. Rather, the resentencing court was required to have awarded him credit against the attempted murder sentence, not the murder sentence. ***Id.*** at 27-29.

Resentencing to correct an illegal sentence does not necessarily implicate double jeopardy. ***See Commonwealth v. Kratzer***, 660 A.2d 102, 105 (Pa. Super. 1995). "If a trial court errs in its sentence on one count in a multi-count case, then all sentences for all counts will be vacated so that the court can restructure its entire sentencing scheme." ***Commonwealth v. Bartrug***, 732 A.2d 1287, 1289 (Pa. Super. 1999). Specifically, appellants whose sentences are disturbed following the successful filing of a PCRA

petition "assume[] the risk that [their] sentencing on the various counts would be adjusted insofar as was necessary to preserve the integrity of the original sentencing scheme." *Commonwealth v. Walker*, 568 A.2d 201, 208 (Pa. Super. 1989), *disapproved of on other grounds by Commonwealth v. Robinson*, 931 A.2d 15, 20-22 (Pa. Super. 2007) (*en banc*). Further,

> [t]his Court has held that a defendant is not entitled to receive credit against more than one sentence for the same time served. We have acknowledged that such "double credit" is prohibited both by the statutory language of Section 9760 and by the principle that a defendant be given credit only for time spent in custody ... for a particular offense.

*Commonwealth v. Ellsworth*, 97 A.3d 1255, 1257 (Pa. Super. 2014) (internal quotations, citations, and brackets omitted).

Here, Harvey intentionally upset the sentencing scheme of the trial court by successfully challenging the life sentence through his PCRA Petition. *See Walker*, *supra*. Consequently, the PCRA court did not err in vacating Harvey's entire sentence. *See Bartrug*, *supra*. Harvey's vacated sentence was life in prison on the murder conviction, and concurrent sentences of, *inter alia*, ten to twenty years for attempted murder.[5] Upon the *Montgomery* Resentencing, Harvey was sentenced to twenty years to life in prison on the

_____

[5] As noted *supra*, Harvey was originally sentenced to death for the murder conviction, which was subsequently vacated by our Supreme Court. Thereafter Harvey was resentenced to life in prison on the murder conviction, while the remaining sentencing scheme was undisturbed. *See Montgomery* Resentencing Court Opinion, 9/2/20, at 1-2 (citing *Harvey*, 812 A.2d at 1190).

murder conviction, and a consecutive sentence of ten to twenty years in prison for the attempted murder conviction.  Accordingly, Harvey was sentenced to a lower aggregate term on resentencing.  **See Commonwealth v. Sutton**, 583 A.2d 500, 502-03 (Pa. Super. 1990) (holding that "no double jeopardy violation is implicated where the aggregate sentence upon resentencing does not exceed the original aggregate sentence") (citation omitted).

Additionally, the resentencing court's decision to impose a consecutive sentence for Harvey's attempted murder conviction, even though Harvey was originally sentenced concurrently, did not violate double jeopardy.  **See Kratzer**, **supra** (holding that the constitutional provisions prohibiting double jeopardy do not prevent the imposition of consecutive sentences upon remand, where the original sentences were concurrent when the aggregate term did not increase upon resentencing).[6]  Further, the record reflects that the resentencing court awarded Harvey credit for time served against the murder conviction, totaling approximately fifteen years.  **See Ellsworth**, **supra**; **see also Illinois v. Vitale**, 447 U.S. 410, 415 (1980) (stating that double jeopardy "protects against multiple punishments for the same

_____

[6] We also note that because Harvey was originally sentenced to death on the murder conviction, the original sentencing court lacked the discretion to impose consecutive sentences on any of his other convictions.  **See Commonwealth v. Graham**, 661 A.2d 1367, 1374 (Pa. 1995) (stating that "when formally imposing a sentence of death … the [sentencing] court has no discretion to order that such sentence be consecutive to any other sentences….").

offense") (internal citations, quotation marks, and some brackets omitted).

In light of the foregoing, we can grant Harvey no relief on this claim.

Second, Harvey argues that the trial court imposed an illegal sentence regarding his first-degree murder conviction. Brief for Appellant at 30-36. Harvey asserts that because the Supreme Court of Pennsylvania, and not the Legislature, created a new law permitting life sentences with the possibility of parole for juvenile offenders, sentences imposed under *Batts I* and *Batts II*[7] violated the separation of powers doctrine. Brief for Appellant at 30-35. Further, Harvey claims that even if the Supreme Court did not violate the separation of powers doctrine in *Batts I* and *Batts II*, retroactive application of the law to Harvey was impermissible. Brief for Appellant at 35-36.

Harvey was convicted of the above-referenced offenses on March 28, 2003. Following the United States Supreme Court's holdings in *Miller* and *Montgomery*, the Pennsylvania General Assembly passed 18 Pa.C.S.A. § 1102.1, which concerned sentencing for juveniles convicted of first-degree and second-degree murder after June 24, 2012. Section 1102.1 states, in relevant part, as follows:

> **§ 1102.1. Sentence of persons under the age of 18 for murder, murder of an unborn child and murder of a law enforcement officer**
>
> **(a) First degree murder.--**A person who has been convicted after June 24, 2012, of a murder of the first degree, first degree

---

[7] *Commonwealth v. Batts*, 66 A.3d 286 (Pa. 2013), and *Commonwealth v. Batts*, 163 A.3d 410 (Pa. 2017), respectively.

murder of an unborn child or murder of a law enforcement officer of the first degree and who was under the age of 18 at the time of the commission of the offense shall be sentenced as follows:

> (1) A person who at the time of the commission of the offense was 15 years of age or older shall be sentenced to a term of life imprisonment without parole, or a term of imprisonment, the minimum of which shall be at least 35 years to life.

* * *

**(e) Minimum sentence.--**Nothing under this section shall prevent the sentencing court from imposing a minimum sentence greater than that provided in this section….

18 Pa.C.S.A. § 1102.1.

In ***Batts II***, our Supreme Court interpreted the United States Supreme Court's ruling in ***Miller***, and held that, pursuant to ***Batts I***, when a resentencing court evaluates the criteria discussed in ***Miller*** and determines that a sentence of life without the possibility of parole is not appropriate, it must then impose a "mandatory maximum sentence of life imprisonment as required by section 1102(a), accompanied by a minimum sentence determined by the common pleas court upon resentencing." ***Batts II***, 163 A.3d at 420. The ***Batts II*** Court instructed resentencing courts to look to mandatory minimum sentences set forth in Section 1102.1(a) as guidance for creating a minimum sentence for a juvenile convicted of first-degree murder prior to when ***Miller*** was decided.

Our Supreme Court further explained that Section 1102 remains valid when applied to juveniles who were convicted of first- or second-degree murder prior to June 25, 2012, since the unconstitutional part of

Pennsylvania's sentencing scheme (the lack of parole eligibility pursuant to section 6137(a)(1)) was severable. *Batts II*, 163 A.3d at 442-43. The *Batts II* Court also stated the following:

> Despite the passage of four years since we issued our decision in *Batts I*, the General Assembly has not passed a statute addressing the sentencing of juveniles convicted of first-degree murder pre-*Miller*, nor has it amended the pertinent provisions that were severed in *Batts I*. As we have previously stated, the General Assembly is quite able to address what it believes is a judicial misinterpretation of a statute, and its failure to do so in the years following the *Batts I* decision gives rise to the presumption that the General Assembly is in agreement with our interpretation.

*Batts II*, 163 A.3d at 445 (internal quotation marks, citations, and footnote omitted).

Subsequently, this Court has relied on our Supreme Court's holding in *Batts II*, and has repeatedly rejected claims that such a sentencing scheme is unconstitutional as applied to juvenile offenders who were convicted of murder prior to *Miller*. *See Commonwealth v. Blount*, 207 A.3d 925, 938-39 (Pa. Super. 2019) (stating that the imposition of a mandatory maximum sentence of life in prison for a juvenile defendant convicted of first-degree murder prior to *Miller* was constitutional); *see also Commonwealth v. Olds*, 192 A.3d 1188, 1197-98 (Pa. Super. 2018) (holding that the imposition of a mandatory maximum sentence of life in prison for a juvenile defendant convicted of second-degree murder prior to *Miller* was constitutional); *Seskey*, 170 A.3d at 1109 (concluding that the resentencing court was required to impose a mandatory maximum sentence of life in prison when

- 11 -

resentencing a juvenile defendant convicted of first-degree murder prior to *Miller*).

Thus, the trial court committed no error by looking to section 1102.1 in determining Harvey's minimum sentence,[8] as required by *Batts II*. *See Batts II*, *supra*. Accordingly, Harvey's argument that the resentencing court imposed an illegal sentence on the grounds that the Supreme Court violated the separation of powers doctrine in *Batts II* fails.[9]

Judgment of sentence affirmed.

_____

[8] We note that Harvey's minimum sentence of twenty years in prison for the murder conviction is significantly less than the mandatory minimum sentence of thirty-five years in prison, as specified in section 1102.1, which would have applied to Harvey had he committed the instant offenses after that statute had taken effect.

[9] With regard to Harvey's argument that *Batts II* could not be applied retroactively, Harvey cites to this Court's decision in *Commonwealth v. Stahley*, 201 A.3d 200 (Pa. Super. 2018). There, we held that *Batts II* was not retroactive as to the issue of the presumption against sentencing juvenile offenders to life in prison without the possibility of parole, as the appellant was a juvenile when he was convicted of first-degree murder in December 2014, and his judgment of sentence was final when *Batts II* was decided. *Stahley*, 201 A.3d at 215-16. On July 24, 2019, our Supreme Court granted Stahley's petition for allowance of appeal, *inter alia*, as to the issue of whether *Batts II* was retroactive. *See Stahley*, 216 A.3d 1031 (Pa. 2019) (Order). However, in this case, as *Batts II* was already decided when Harvey was resentenced in September 2018, the retroactivity of *Batts II* was not relevant to Harvey's instant judgment of sentence.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/7/21