J-S13021-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
LESLIE L. BROWN :
:
Appellant : No. 1053 WDA 2017
:

Appeal from the PCRA Order June 22, 2017
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0008030-2009

BEFORE:  GANTMAN, P.J., SHOGAN, J., and MUSMANNO, J.

MEMORANDUM BY SHOGAN, J.:                    **FILED APRIL 2, 2018**

Appellant, Leslie L. Brown, appeals from the order denying his petition

for relief filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.

§§ 9541-9546.  We affirm.

This Court previously summarized the facts of the crime and initial

procedural history as follows:

> At approximately 12:00 a.m. on the morning of September
> 29, 2006, 16-year-old [Appellant] was in the Swissvale
> neighborhood of Allegheny County with friends Lamar Meggison
> ("Meggison"), Keith Smith ("Smith"), and Daniel Holmes.  As the
> group proceeded to a local convenience store, [Appellant]
> approached Michael Stepien ("Stepien" or "the victim"), who was
> walking in a nearby alley, and demanded money, holding a gun to
> Stepien's head.  Stepien told [Appellant] he had no money.
> [Appellant] fired two warning shots—one in the air and one into
> the ground—and demanded money a second time.  When Stepien
> again told him he did not have any money, [Appellant] shot him
> in the head.  [Appellant] and his friends, who were still in the area,

ran to the home of Terico Ross, another friend who lived in the neighborhood. While there, in the presence of his friends, [Appellant] said that he killed someone.

Paramedics responded to a call of a man lying in the alley between Nied's Funeral Home and the volunteer fire department and transported the victim to the hospital. Stepien was pronounced dead from the gunshot wound to his head at approximately 3:00 a.m. on September 29, 2006. Medical personnel removed a badly damaged .22 caliber bullet from Stepien's head.

On October 6, 2006, at a bus stop in Swissvale several blocks from where the murder occurred, [Appellant] approached Francis Yesco ("Yesco") from behind, put a gun to his head, told him not to move, and reached into Yesco's pants pocket. Yesco brushed [Appellant's] hand away and turned to strike [Appellant], at which [Appellant] fled, still holding the gun. Yesco and Swissvale Police Officer Justin Keenan, who was patrolling in the area and observed what happened, chased [Appellant] for approximately half a block, during which [Appellant] discarded the firearm over a fence. Officer Keenan ultimately caught [Appellant] and arrested him, and recovered the gun shortly thereafter.

A ballistics expert for the Commonwealth test-fired [Appellant's] gun, a .22 caliber revolver, and compared the test bullet with the bullet removed from the victim. The bullet recovered from Stepien's head was so badly damaged it could not be matched, but because it shared certain similarities with the test bullet, [Appellant's] gun could not be excluded as the murder weapon.

The police had no further evidence linking [Appellant] to Stepien's murder until 2008, when they arrested Carl Smith, Smith's brother, who told police that Smith was present at the time [Appellant] shot Stepien. This led police to interview other witnesses, who also implicated [Appellant] in Stepien's murder. A grand jury was subsequently convened, and ultimately [Appellant] was arrested.

The Commonwealth charged [Appellant] by information with criminal homicide, robbery, carrying a firearm without a license, and possession of a firearm by a minor.[1] Following a three-day trial, a jury convicted [Appellant] of second-degree murder,[2]

- 2 -

robbery, carrying a firearm without a license, and possession of a firearm by a minor. On May 23, 2011, the trial court sentenced [Appellant] to a mandatory term of life in prison without the possibility of parole for second-degree murder and to a consecutive term of three to six years of imprisonment for carrying a firearm without a license. The court imposed no further penalty on the remaining convictions.

[1] 18 Pa.C.S.A. §§ 2501(a), 3701(a)(1), 6106, 6110.1(a).

[2] 18 Pa.C.S.A. § 2502(b).

Following sentencing, the trial court granted trial counsel's motion to withdraw. The trial court did not appoint new counsel until July 14, 2011. On September 30, 2011, [Appellant] filed a counseled petition pursuant to the Post Conviction Relief Act seeking reinstatement of his post-sentence rights. The trial court granted his request on December 1, 2011, ordering the filing of post-sentence motions *nunc pro tunc* within 10 days of its order. [Appellant] complied on December 7, 2011, raising a challenge to the weight of the evidence and two claims of trial court error. On January 20, 2012, the trial court granted [Appellant] permission to file amended post-sentence motions, which [Appellant] did on March 30, 2012, raising an additional claim of trial court error. On May 16, 2012, [Appellant's] post-sentence motions were denied by operation of law.

Brown filed a timely notice of appeal, and complied with the trial court's request for a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). He then filed a supplemental 1925(b) statement, raising for the first time a claim that his mandatory sentence of life in prison without the possibility of parole is unconstitutional.

***Commonwealth v. Brown***, 71 A.3d 1009, 1011–1012 (Pa. Super. 2013).

This Court rejected both Appellant's claim that his convictions were against the weight of the evidence and an evidentiary issue, but it vacated the judgment of sentence and remanded to the trial court for resentencing in light of ***Miller v. Alabama***, 567 U.S. 460 (2012), and ***Commonwealth v. Knox***,

- 3 -

50 A.3d 749 (Pa. Super. 2012). ***Brown***, 71 A.3d at 1017. Our Supreme Court denied Appellant's petition for allowance of appeal. ***Commonwealth v. Brown***, 77 A.3d 635, 346 WAL 2013 (Pa. filed October 10, 2013).

The trial court held a sentencing hearing on November 19, 2014, following which it sentenced Appellant to forty years to life in prison for murder and a consecutive term of three to six years of imprisonment for carrying a firearm without a license. Appellant filed a timely post-sentence motion, which the trial court denied. Appellant filed a timely notice of appeal.

On appeal to this Court, Appellant challenged the discretionary aspects of his sentence, claiming it was both excessive and unreasonable. We disagreed and affirmed the judgment of sentence. ***Commonwealth v. Brown***, 133 A.3d 81, 535 WDA 2015 (Pa. Super. filed September 28, 2015) (unpublished memorandum). Our Supreme Court denied Appellant's petition for allowance of appeal. ***Commonwealth v. Brown***, 128 A.3d 218, 396 WAL 2015 (Pa. filed December 1, 2015).

On December 11, 2015, Appellant filed the instant, timely, *pro se* PCRA petition. The PCRA court appointed counsel, who filed an amended PCRA petition on December 22, 2016. The PCRA court issued its notice of intent to dismiss the petition pursuant to Pa.R.Crim.P. 907 on May 19, 2017, and dismissed the petition on June 22, 2017. Appellant filed a timely notice of appeal on July 21, 2017. The PCRA court did not order the filing of a Pa.R.A.P. 1925(b) statement. In lieu of a Rule 1925(a) opinion, the PCRA court refers

us to its explanation in the Notice of Intention to Dismiss Pursuant to Pa.R.Crim.P. 907.

Appellant raises the following issues for our review:

I.   Are [Appellant's] claims for relief are [sic] properly cognizable under the Post-Conviction Relief Act?

II.   Did the lower court abuse its discretion in denying the PCRA petition, as amended, without a hearing insofar as [Appellant] established the merits of the claim that appellate counsel was ineffective for failing to raise a claim on appeal that the trial court abused its discretion in denying [Appellant's] request for new counsel to represent him at trial upon failing to hold a full and meaningful hearing regarding [Appellant's] allegation that his court-appointed attorney had a conflict of interest regarding his case, and that he and his court-appointed trial counsel had irreconcilable differences?

III.   Did the lower court impose[] an illegal sentence insofar as the only authorized sentence for a second degree murder committed by a juvenile in 2006 is unconstitutional, and that defect cannot be remedied by either severance or judicial revision of the statute, as a result, [Appellant] must be resentenced for a lesser offense?

Appellant's Brief at 5 (full capitalization omitted).

When reviewing the propriety of an order denying PCRA relief, we consider the record "in the light most favorable to the prevailing party at the PCRA level." *Commonwealth v. Stultz*, 114 A.3d 865, 872 (Pa. Super. 2015) (quoting *Commonwealth v. Henkel*, 90 A.3d 16, 20 (Pa. Super. 2014) (*en banc*)). This Court is limited to determining whether the evidence of record supports the conclusions of the PCRA court and whether the ruling is free of legal error. *Commonwealth v. Robinson*, 139 A.3d 178, 185 (Pa.

2016). The PCRA court's findings will not be disturbed unless there is no support for them in the certified record. **Commonwealth v. Lippert**, 85 A.3d 1095, 1100 (Pa. Super. 2014).

Our Supreme Court has held that "PCRA hearings are not discovery expeditions, but are conducted when necessary to offer the petitioner an opportunity to prove his explicit assertion of ineffectiveness raising a colorable claim about which there remains an issue of material fact." **Commonwealth v. Cousar**, 154 A.3d 287, 299 (Pa. 2017) (citing **Commonwealth v. Sneed**, 45 A.3d 1096, 1107 (Pa. 2012). Moreover, "the PCRA court has discretion to dismiss a petition without a hearing when the court is satisfied 'there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by further proceedings.'" **Cousar**, 154 A.3d at 297 (citing **Commonwealth v. Roney**, 79 A.3d 595, 604 (Pa. 2013). "[S]uch a decision is within the discretion of the PCRA court and will not be overturned absent an abuse of discretion." **Commonwealth v. Mason**, 130 A.3d 601, 617 (Pa. 2015).

We first address Appellant's Issue II, asserting ineffective assistance of his prior counsel.[1] When considering an allegation of ineffective assistance of counsel, counsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves that: (1) the underlying claim is of

---

[1] Appellant's first issue merely is a recitation of case law and does not pose an issue for this Court's disposition.

arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) petitioner was prejudiced by counsel's action or omission. *Commonwealth v. Johnson*, ___ A.3d ___, ___, 2018 PA Super 28, *5 (Pa. Super. 2018) (citing *Commonwealth v. Pierce*, 527 A.2d 973, 975–976 (Pa. 1987)). "In order to meet the prejudice prong of the ineffectiveness standard, a defendant must show that there is a 'reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Commonwealth v. Reed*, 42 A.3d 314, 319 (Pa. Super. 2012). A claim of ineffective assistance of counsel will fail if the petitioner's evidence fails to meet any one of the three prongs. *Commonwealth v. Simpson*, 66 A.3d 253, 260 (Pa. 2013). Because courts must presume that counsel was effective, *Commonwealth v. Montalvo*, 114 A.3d 401, 410 (Pa. 2015), the burden of proving ineffectiveness rests with the petitioner. *Commonwealth v. Rega*, 933 A.2d 997, 1018 (Pa. 2007).

Appellant argues that the PCRA court erroneously denied Appellant's PCRA petition without a hearing regarding Appellant's claim that appellate counsel was ineffective for failing to challenge the trial court's refusal to appoint Appellant new counsel at trial. Appellant's Brief at 16, 23. If it had done so, Appellant alleges, he would have proven that the trial court failed to engage in a "meaningful inquiry" involving Appellant's reasons for the request for new counsel. *Id*. at 20. In support, he cites and contrasts

*Commonwealth v. Tyler*, 360 A.2d 617 (Pa. 1976), and *Commonwealth v. Floyd*, 937 A.2d 494 (Pa. Super. 2007). Appellant's Brief at 20–22.

The PCRA court concluded that this claim did not present a genuine issue of material fact; thus, an evidentiary hearing would serve no purpose. Notice of Intention to Dismiss Pursuant to Pa.R.Crim.P. 907, 5/19/17, at 1. As Appellant is asserting appellate counsel's ineffectiveness, not that of trial counsel, Appellant must demonstrate that if appellate counsel had raised the underlying claim, "there is a reasonable probability that appellate counsel would have been successful in litigating this claim before the Superior Court." *Id*. In order to meet his burden, Appellant must prove that this Court would conclude that the trial court abused its discretion in failing to grant Appellant's request for new counsel.

We begin by noting that "the right to appointed counsel does not include the right to counsel of the defendant's choice." *Commonwealth v. Albrecht*, 720 A.2d 693, 709 (Pa. 1998). This Court has stated:

> Rather, the decision to appoint different counsel to a requesting defendant lies within the discretion of the trial court. *Commonwealth v. Grazier*, 391 Pa. Super. 202, 570 A.2d 1054, 1055 (1990). Before new counsel is appointed, "a defendant must show irreconcilable differences between himself and his court-appointed counsel before a trial court will be reversed for abuse of discretion in refusing to appoint new counsel." *Id*.; *see also* Pa.R.Crim.P. 122(C) ("A motion for change of counsel by a defendant for whom counsel has been appointed shall not be granted except for substantial reasons.").

*Commonwealth v. Smith*, 69 A.3d 259, 266 (Pa. Super. 2013). Moreover, it is well established that "an indigent defendant is not entitled to free counsel

- 8 -

of his choice; that appointed counsel may only be rejected for 'good cause shown'; and that a 'mere dissatisfaction' with appointed counsel does not constitute good cause." *Id*. at 267 (citing *Commonwealth v. Knapp*, 542 A.2d 546, 549 (Pa. Super. 1988)); *see also Grazier*, 570 A.2d at 1056 (mere averment that in a separate, unrelated proceeding another member of the public defender's staff rendered ineffective assistance, without more, does not incapacitate the entire staff of the public defender from representing the appellant); *Commonwealth v. Chew*, 487 A.2d 1379 (Pa. Super. 1985) (mere difference of opinion concerning trial strategy or brevity of pretrial communications does not compel the appointment of new counsel); *Commonwealth v. Johnson*, 454 A.2d 1111 (Pa. Super. 1983) (defendant's asserted lack of confidence in court appointed counsel's attitude was not sufficient reason for appointment of new counsel).

Appellant contends that the trial court failed to engage in a meaningful inquiry into the basis for Appellant's dissatisfaction with defense counsel throughout trial. Due to the court's failure in that regard, if appellate counsel had raised the issue, Appellant submits it is likely that this Court would have found that the trial court abused its discretion in failing to appoint new counsel for Appellant. For the reasons that follow, we disagree, and we further discern that Appellant's asserted case law in support is distinguishable.

Appellant suggests "there is no clear record with respect to whether the judge understood why [Appellant] was attempting to have counsel replaced."

Appellant's Brief at 22. The record simply does not support such a claim. The trial court inquired about Appellant's dissatisfaction with trial counsel and explained its perception to Appellant. During a pretrial discussion of preliminary matters, Appellant told the court he felt "like I have ineffective counsel," and Appellant did not have "full discovery." N.T., 2/22/11, at 6. The trial court inquired what was missing, but Appellant repeated "there is basic[] discovery that I don't have that I should have and I don't want to proceed with this trial." *Id*. at 6–7. Upon inquiry, trial counsel told the court, "My client has every piece of discovery that I have." *Id*. at 6. Despite the trial court's further inquiry, Appellant did not specify what discovery he lacked but instead, vaguely asserted, "There is definitely stuff missing from my discovery." *Id*. at 7. The trial court acknowledged Appellant's objection for the record, it apparently was satisfied with trial counsel's representations, and it concluded that the trial would proceed. *Id*. at 6–7.

The trial court continued to entertain Appellant's complaints about trial counsel, out of the presence of the jury. On the second day of trial, February 23, 2011, during the lunch break, Appellant asserted his displeasure regarding allegedly inconsistent statements by some witnesses that trial counsel did not expose. The following exchange occurred:

> [APPELLANT]: I have certain questions. They are not questions that have no relevance, questions that I want him to ask about evidence entered into the proceeding that he flat-out refused. At the beginning I explained I have ineffective counsel and stated the reasons, the phone calls. I feel like I have

- 10 -

ineffective counsel and I would not like to proceed with the lawyer that I have.

THE COURT: He is an experienced attorney. He has tried as many homicides as anybody in this courthouse, Mr. Brown. I did notice this morning that you were writing things down and he consulted with you about [them] and obviously felt that those questions were not appropriate questions and did not ask.

[APPELLANT]: Your Honor–

THE COURT: Wait. So in that regard as an officer of the court and consistent with his knowledge of the Rules of Evidence and his experience he did not pose the questions perhaps that you wanted asked or posing them in the way that you wanted them asked but that is a matter of his judgment again consistent with his experience and knowledge of the Rules of Evidence.

[APPELLANT]: Your Honor, I understand that he has prior experience, I definitely understand that, but what seemed like him consulting with me was really him blowing me off. We don't even get along. I feel like I do not want to proceed with the lawyer that I have basically and the questions that I have are definitely relevant. If I would bring them up to you, you would understand. They are definitely relevant, statements that are made that are inconsistent. Statements that are made that he testified as grand juror, they should have been brought up and he refuses to do it.

N.T., 2/23/11, at 172–173. The trial court considered Appellant's position and

replied:

THE COURT: He certainly demonstrated, Mr. Brown, this morning a very intimate knowledge of the record, prior inconsistent statements of the grand jury and police proceedings and he confronted Mr. Smith about that pointedly from my perception so your motion for discharging [trial counsel] is denied if it amounts to any of those things. Thank you.

N.T., 2/23/11, at 174.

Near the end of trial, after the jury was removed, Appellant complained

about trial counsel's handling of tapes of jail telephone calls, and he asserted

- 11 -

that he never learned of the tapes until the day of trial. N.T., 2/23/11, at 261. The trial court listened to Appellant's concerns and advised, "I will give you overnight to consult with [trial counsel] about that matter if you need time." *Id*. at 262. The Commonwealth then clarified the discovery regarding the tapes, trial counsel explained his opinion, and Appellant was again given the opportunity to assert his concern. *Id*. at 262–264.

Finally, following the court's charge to the jury, Appellant once again averred that he continued to believe defense counsel was ineffective and that "there is a conflict of interest between me and my attorney." N.T., 2/24/11, at 323. The trial court responded that Appellant had clearly asserted his dissatisfaction with trial counsel for the record. *Id*.

We begin our analysis by examining **Smith**, *supra*, wherein the appellant also asserted that the trial court failed to engage in meaningful inquiry into the expressed desire for new counsel. In **Smith**, a remand was necessary because the trial court therein made no attempt to ascertain whether the appellant desired to represent himself or merely sought the appointment of new counsel. The **Smith** trial court told the defendant to "suck it up" and that it was "not interested" in the defendant's rights and that he should "[t]ake it up to the Superior Court." **Smith**, 69 A.3d at 266. In the present case, the record is clear that Appellant sought different court-appointed counsel. Indeed, there has never been an allegation in the instant case that Appellant sought to represent himself. Appellant's Brief at 20, 23.

- 12 -

Moreover, as noted *supra*, the cases Appellant cited are distinguishable. In **Tyler**, 360 A.2d 617, the defendant asserted an irreconcilable difference of opinion from his court-appointed counsel regarding how the defendant's trial should be conducted. **Id**. at 618. Because trial counsel "acknowledged the existence of such a difference of opinion but advised the court that he was precluded by the attorney-client privilege from further explaining the nature of the difficulties," the trial court was unable to conduct an inquiry into the nature of the dispute. **Id**. Thus, in **Tyler**, the trial court had no information about the specific conflict between the defendant and his attorney before it denied the defendant's request for new counsel. **Id**. Our Supreme Court concluded in **Tyler** that the refusal to appoint new counsel was an abuse of discretion. **Id**. at 619. **See also Floyd**, 937 A.2d at 499 (discussing **Tyler** and noting that the trial court in **Tyler** was "essentially prevent[ed] . . . from inquiring into the underpinnings of the defendant's complaints").

The case at bar is in stark contrast to the above cases. The record reflects that the instant trial court allowed Appellant to express his dissatisfaction on multiple occasions, probed the nature of Appellant's specific complaints, asked questions of trial counsel about the nature of the conflict in each instance, and concluded there was not a breakdown in the relationship that warranted appointment of new counsel. Accordingly, we discern no abuse of the PCRA court's discretion in determining that no genuine issue of material fact existed to warrant a hearing. "As counsel is not deemed to be ineffective

for failing to preserve a meritless issue for appellate review, Appellant is not entitled to relief on this claim." ***Johnson***, ___ A.3d at ___, 2018 PA Super 28 at *7 (citing ***Commonwealth v. Loner***, 836 A.2d 125, 132 (Pa. Super. 2003) (*en banc*)). Thus, we conclude Appellant's ineffective-assistance-of-counsel claim does not warrant relief.

In his final issue, referencing ***Miller v. Alabama***, 567 U.S. 460 (2012), Appellant avers that "the lower court imposed an illegal sentence insofar as the only authorized sentence for a second degree murder committed by a juvenile in 2006 is unconstitutional. . . ." Appellant's Brief at 25. Thus, he posits that he "must be resentenced for a lesser offense." ***Id***. Appellant continues that he could "not be subjected to a '***Miller*** resentencing' because under settled Pennsylvania law . . . there is no valid[] constitutional penalty provided in Pennsylvania's criminal sentencing laws for a second degree murder committed by a youth under 18 prior to 2012." Appellant's Brief at 26.

When reviewing the legality of a sentence, "our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Brown***, 159 A.3d 531, 532 (Pa. Super. 2017) (citation omitted). As noted *supra*, Appellant committed the murder in 2006, when he was sixteen years old.[2] On May 23, 2011, the trial court imposed a sentence of life imprisonment without the

---

[2] Appellant was born on July 22, 1990. Complaint, 6/2/09.

possibility of parole. While Appellant's direct appeal was pending, the United States Supreme Court decided *Miller* on June 25, 2012. The *Miller* Court stated that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" *Miller*, 567 U.S. at [460] 132 S.Ct at 2460; *see also Knox*, 50 A.3d at 769 ("[A] mandatory sentence of a term of life imprisonment without the possibility of parole for a juvenile offender convicted of second-degree murder is cruel and unusual punishment and a violation of the Eighth Amendment. . . ."). Therefore, on July 17, 2013, this Court vacated Appellant's judgment of sentence and remanded to the trial court for resentencing. *Brown*, 71 A.3d at 1017.

In remanding the case for resentencing, this Court acknowledged that the newly enacted statute intended to address *Miller*, 18 Pa.C.S. § 1102.1, was inapplicable to Appellant's case in that the new legislation explicitly stated that it applied only to defendants convicted after June 24, 2012. Accordingly, upon remand, this Court issued the following guidance to the trial court:

> It is uncontested that the trial court sentenced [Appellant] to a mandatory term of life in prison without the possibility of parole for second-degree murder that he committed when he was 16 years old. The United States Supreme Court has spoken clearly on this issue: "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" *Miller*, 132 S.Ct.at 2460; *see also Knox*, 50 A.3d at 769 (holding that "a mandatory sentence of a term of life imprisonment without the possibility of parole for a juvenile offender convicted of second-degree murder is cruel and unusual punishment and a violation of the Eighth Amendment of the United States

- 15 -

Constitution and Article I, Section 13 of the Pennsylvania Constitution," and setting forth a non-exhaustive list of factors to be considered upon resentencing); **Commonwealth v. Batts**, [620] Pa.[115], [66] A.3d [286], 2013 WL 1200252, *6 (Mar.26, 2013) (life sentence without the possibility of parole unconstitutional for first-degree murder committed when the defendant was 14 years old).  We therefore agree that we must vacate the judgment of sentence and remand for resentencing pursuant to **Miller** and **Knox**.[7]

[FN 7] On October 25, 2012, the Pennsylvania Legislature passed new legislation setting forth the sentence for persons who commit murder, murder of an unborn child and murder of a law enforcement officer prior to the age of 18.  18 Pa.C.S.A. §1102.1. This statute expressly applies only to defendants convicted after June 24, 2012.  **Id**.  As the trial court sentenced [Appellant] on May 23, 2011, this statute is inapplicable to the case at bar.

**Brown**, 71 A.3d at 1016–1017.[3]

Upon remand, at the November 19, 2014 resentencing, the trial court explained the reasons for this Court's remand, the applicable law, and the sentencing factors the court intended to consider in resentencing Appellant. N.T. (Resentencing), 11/19/14, at 3–11.[4]  The court weighed the various standard sentencing factors and age-related factors and, as noted *supra*, resentenced Appellant to forty years to life incarceration for second-degree

---

[3]  In response to **Miller** and the codification of 18 Pa.C.S. § 1102.1, the Sentencing Commission "created a basic sentencing matrix specifically for juvenile first-and second-degree homicide offenders where the offense occurred **after** June 24, 2012.  **Commonwealth v. Melvin**, 172 A.3d 14, 21–22 (Pa. Super. 2017) (emphasis in original) (citing 204 Pa. Code § 303.16(b)).

[4]  The November 19, 2014 notes of testimony are erroneously labeled "PCRA Transcript."

murder. ***Id***. at 61–72; ***see also*** Trial Court Opinion Following Resentence, 5/26/15, at 8, 8 n.6 (docket entry 65). Appellant challenged the discretionary aspects of his new sentence in his ensuing direct appeal. We ultimately denied relief on Appellant's claim, concluding that he "failed to present this Court with a substantial question worthy of appellate review." ***Brown***, 535 WDA 2015 (unpublished memorandum at 8).

We reject Appellant's contention that his sentence is illegal because there is "no valid, constitutional penalty provided in Pennsylvania's criminal sentencing laws for a second degree murder committed by a youth under 18 prior to 2012." Appellant's Brief at 26. In ***Commonwealth v. Machicote***, 172 A.3d 595 (Pa. Super. 2017), relying principally upon ***Commonwealth v. Batts***, 163 A.3d 410, 421 (Pa. 2017) (***Batts II***),[5] we determined that "a trial court, in resentencing a juvenile offender convicted [of second-degree murder] prior to ***Miller***, was constitutionally permitted to impose a minimum term-of-years sentence and a maximum sentence of life imprisonment, thus 'exposing these defendants to parole eligibility upon the expiration of their minimum sentences.'" ***Machicote***, 172 A.3d at 601.

---

[5] In ***Batts II***, we explained that the trial court has discretion to impose a life sentence without the possibility of parole upon juvenile offenders convicted of first-degree murder prior to ***Miller*** as long as the court follows the criteria identified in ***Miller***. If, however, the court elects not to impose a life sentence without the possibility of parole, it must impose both a minimum sentence and a maximum sentence of life imprisonment with the possibility of parole.

Similarly, in **Melvin**, 172 A.3d 14, we addressed the appellant's challenge to the legality of his resentence for the crime of second-degree murder. Therein, the appellant's sentence for life imprisonment without the possibility of parole, imposed when he was a juvenile, was vacated pursuant to **Miller**, and he was resentenced to a term of incarceration of thirty years to life in prison. **Melvin**, 172 A.3d at 18. On appeal from the judgment of sentence, the appellant asserted the sentencing court lacked any "valid statutory authority to impose a term-of-years sentence with a maximum term of life imprisonment at his resentencing . . . because the crime at issue . . . was committed before June 24, 2012," and thus, "the only possible legal sentence is on the lesser included offense of third-degree murder or the underlying felony of robbery." **Id**. (footnote omitted). This is essentially the same claim as asserted herein.

In rejecting the appellant's issue, we stated:

[T]he Court [in **Batts II**] expressly rejected the claim of Batts and his *amici*, which [the a]ppellant herein now argues, that there is no legislatively authorized sentence for juveniles convicted of first-degree murder prior to 2012. [**Batts II**] at 435–41. The Court also rejected Batts' contentions that the forty year maximum penalty for third-degree murder is the only legal alternative and that severance of the statute is impossible. [**Batts II**] at 441–48. Importantly, the Court held, *inter alia*, that a trial court, in resentencing a juvenile offender convicted prior to **Miller**, was constitutionally permitted to impose a minimum term-of-years sentence and a maximum sentence of life imprisonment, thus "exposing these defendants to parole eligibility upon the expiration of their minimum sentences". **Batts II**, 163 A.3d at 439. We are bound by our Supreme Court's decision. Thus, we disagree with [the a]ppellant that his resulting thirty-years-to-life sentence is illegal. . . .

- 18 -

*Id*. at 22 (footnote omitted).

The instant trial court followed the guidance set forth in **Miller**, **Knox** and **Batts II**. Notice of Intention to Dismiss Pursuant to Pa.R.Crim.P. 907, 5/19/17, at 2. In conjunction with our consideration of **Machicote** and **Melvin**,[6] we conclude the trial court's imposition of sentence of forty years to life in prison was not an illegal sentence.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/2/2018

---

[6] We note that neither Appellant nor the Commonwealth acknowledged **Machicote** or **Melvin**, both of which preceded the filing of briefs in this case by three months.