J-A26035-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRIAN SAMUEL | : | |
| | : | |
| Appellant | : | No. 250 WDA 2019 |

Appeal from the Judgment of Sentence Entered January 22, 2019
In the Court of Common Pleas of Beaver County Criminal Division at
No(s):
CP-04-CR-0001376-1996

BEFORE: SHOGAN, J., LAZARUS, J., and OLSON, J.

MEMORANDUM BY OLSON, J.:                    **FILED DECEMBER 16, 2019**

Appellant, Brian Samuel, appeals from the judgment of sentence entered on January 22, 2019 in the Criminal Division of the Court of Common Pleas of Beaver County. On appeal, Appellant challenges the legality of his sentence as well as the exercise of the court's discretion in fixing his punishment. In particular, Appellant alleges that his consecutive sentences of 30 years to life for two first-degree murder convictions constitute a *de facto* sentence of life without the possibility of parole (LWOP) which violates his constitutional rights. Appellant also claims that the trial court erred in imposing upon him the costs of prosecution associated with resentencing procedures necessitated by the evolution of constitutional law. In the alternative, Appellant maintains that the trial court abused its discretion by imposing an excessive sentence and in denying the appointment of a

mitigation expert. For the reasons that follow, we conclude that the trial court imposed lawful sentences and that it did not abuse its discretion during the course of Appellant's resentencing proceedings. We vacate, however, the judgment of sentence to the extent it directed Appellant to pay the costs of prosecution.

The trial court summarized the facts and procedural history in this case as follows.

> On April 11, 1996, at about 10:00 p.m. in the City of Aliquippa, Beaver County, William and Teresa Samuel were murdered, contemporaneously, in and just outside their home. [Appellant] along with his co-defendants were arrested and charged with both killings on or about April 15, 1996. At the time of the incident, [Appellant], who was the son of both victims, was 16 years of age, born May 21, 1979. Following a jury trial which began on September 22, 1997, [Appellant] was found guilty on all counts in the information. The most serious of the counts being first-degree murder, the case then proceeded to a penalty phase. The jury rendered a verdict of life imprisonment as to one of the co-defendants but could not reach a verdict as to [Appellant] or [his] other co-defendant. The [trial c]ourt discharged the jury at that time and on October 28, 1997, sentenced [Appellant] to two consecutive terms of life imprisonment [without the possibility for parole] for the first-degree murder convictions.
>
> [Appellant] appealed from the judgment of sentence and on October 6, 1999, th[is] Court affirmed. Subsequently, [Appellant] filed a petition for allowance of appeal, and on May 9, 2001 the Supreme Court of Pennsylvania issued an order denying [Appellant's] petition. On August 6, 2012, [Appellant] filed a *pro se* motion [pursuant to the Post-Conviction Relief Act[1] ("PCRA")] citing **Miller v. Alabama**[, 567 U.S. 460 (2012)]. Th[e PCRA c]ourt appointed the Beaver County Public Defender's office to represent [Appellant] and on May 1, 2013 the [c]ourt entered an

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

[o]rder deferring its decision on [Appellant's] petition pending [a] decision by [the Pennsylvania] Supreme Court in *Commonwealth v. Cunningham*, 51 A.3d 178 (Pa. 2012), which had granted an appeal on the issue of whether *Miller* applied retroactively to an inmate serving a sentence of life imprisonment without parole when the inmate had exhausted his direct appeal rights and is proceeding under the [PCRA].

On December 23, 2013, the [PCRA c]ourt entered an [o]rder providing that our Supreme Court in *Commonwealth v. Cunningham*, 81 A.3d 1 (Pa. 2013) had decided that "*Miller's* proscription of the imposition of mandatory life-without-parole sentences upon offenders under the age of 18 at the time their crimes were committed will not be extended retroactively[.]" Thereafter, on February 5, 2014, the [c]ourt dismissed [Appellant's] PCRA petition without a hearing.

On or about March 4, 2016, [Appellant] filed a[ second PCRA petition] arguing that the United States Supreme Court held in *Montgomery v. Louisiana*[, 136 S.Ct. 718 (2016)] that *Miller* announced a substantive rule that is retroactive in cases on collateral review. *Montgomery*, 136 S.Ct. [at] 732[.] [Appellant's second] PCRA [petition] was reassigned to [the original PCRA c]ourt for further proceedings on March 9, 2017. On or about April 30, 2018, [Appellant] filed a motion for the appointment of a mitigation specialist and forensic psychiatrist and requested $35,000[.00] in funding for these experts. The Commonwealth filed a brief in opposition to [Appellant's] motion and by order dated June 27, 2018, th[e PCRA c]ourt denied [Appellant's] request for expert funding. In that [o]rder [the court] held that based upon the Pennsylvania Supreme Court's decision in *Commonwealth v. Batts*, 163 A.3d 410 (Pa. 2017) ("*Batts II*") and *Commonwealth v. Foust*, 180 A.3d 416 (Pa. Super. 2018), expert testimony was unnecessary in this case.

On January 22, 2019, th[e trial c]ourt held a sentencing hearing. At the time of the hearing, the Commonwealth presented testimony and evidence in support of [its] recommendation to the court that [Appellant] be resentenced to two terms of 35 years[*] imprisonment to life to run consecutively. Contrarily, [Appellant] argued in his sentencing memorandum as well as at the time of the hearing that the [c]ourt should run the 35[-]year to life sentences concurrently so that [Appellant would] be eligible for parole by age 51. Having considered the testimony of the witnesses, impact statements, the photographic and documentary

evidence as well as the testimony by [Appellant] himself, th[e c]ourt determined that an appropriate sentence based upon [Appellant's age] at the time of the offense is two, 30-year to life sentences to run consecutively.

Trial Court Opinion, 1/29/19, at 1-4.

Appellant filed a timely notice of appeal to this Court on February 14, 2019. Thereafter, pursuant to Pa.R.A.P. 1925(b), Appellant filed a timely, court-ordered concise statement of errors complained of on appeal.

Appellant raises the following claims in his brief to this Court:

1. Is the imposition of an aggregate sentence of 60 years to life on a juvenile a *de facto* life sentence requiring, as mandated by the [Pennsylvania Supreme] Court in [**Batts II**], the resentencing court to find beyond a reasonable doubt that the juvenile is permanently incorrigible, irreparably corrupt, or irretrievably depraved?

2. Did the resentencing court err in holding that consecutive sentences that in the aggregate constitute an unconstitutional *de facto* life sentence are nevertheless lawful because the court may examine the sentence on each individual count separately, even when the counts arise from a single episode of criminal conduct?

3. Did the resentencing court err by failing to consider on the record the factors contained in **Miller** and adopted by the Pennsylvania Supreme Court in **Commonwealth v. Batts**, 66 A.3d 286, 297 (Pa. 2013) [hereinafter "**Batts I**"] prior to sentencing [Appellant] and, as a result, impose a manifestly excessive sentence?

4. Did the resentencing court err by imposing a mandatory maximum sentence of life imprisonment for a murder committed by a juvenile?

5. Did the resentencing court err when it ordered [Appellant] to pay the costs of prosecution associated with a resentencing necessitated by the evolution of constitutional law, particularly when the court did not consider [Appellant's] ability to pay and

- 4 -

re-imposed costs that exceed the amounts authorized by statute?

6. Did the resentencing court abuse its discretion when it denied [Appellant's] request for funding for a mitigation expert, thereby leaving the court without all of the evidence demonstrating [Appellant's] mental, emotional, or developmental characteristics at the time of the offense?

7. Did the resentencing court abuse its discretion by failing to consider on the record the factors set forth in *Miller* and 18 Pa.C.S. § 1102.1(d) prior to sentencing [Appellant] and, as a result, impose a manifestly excessive sentence?

Appellant's Brief at 5-6.

Appellant's first five issues challenge the legality of his sentence. Hence, our standard of review is *de novo* and our scope of review is plenary. *See Foust*, 180 A.3d at 422 (considering constitutionality of imposing 60-year to life sentence upon juvenile double homicide defendant).[2]

In his first and second issues, Appellant argues that his sentence is illegal because it constitutes a *de facto* LWOP sentence. Citing *Miller* and *Montgomery*, Appellant argues that juvenile homicide defendants may not be subject to LWOP sentences in the absence of a determination that they are permanently incorrigible or incapable of rehabilitation. Appellant points out

---

[2] Our Supreme Court has placed on hold a petition for allowance of appeal filed in *Foust* pending the disposition of an appeal taken from a decision issued by this Court in *Commonwealth v. Felder*, 181 A.3d 1252 (Pa. Super. 2017). *Felder* asks our Supreme Court to consider whether a sentence of 50 years to life constitutes a *de facto* sentence of life without the possibility of parole so as to require a finding of permanent incorrigibility by the sentencing court. *See Commonwealth v. Foust*, 126 WAL 2018 (Pa. Sept. 5, 2018) (order holding petition for allowance of appeal in abeyance); *see also Commonwealth v. Felder*, 187 A.3d 909 (Pa. 2018) (granting petition for allowance of appeal).

that **Foust** extended this rule to *de facto* life sentences. Moreover, according to Appellant, multiple consecutive sentences, such as those imposed in this case, must be examined in the aggregate, and not individually, when evaluating whether they constitute *de facto* life sentences. In Appellant's view, both **Miller** and our Supreme Court's decision in **Batts II** support the idea that sentences must be examined in the aggregate because any categorical prohibition against "volume discounts" in sentencing wrongly discounts considerations of youth and allows the facts of a crime to outweigh valid mitigation arguments.

**Foust** stands on all fours with the instant case and squarely rejects the contentions raised in Appellant's first two issues. In **Foust**, a 17 year-old defendant was convicted of two counts of first degree murder for the intentional killings of two individuals. In June 1994, he was sentenced to two consecutive LWOP sentences. In 2016, Foust filed a PCRA petition in which he argued that his two consecutive LWOP sentences violated the Eighth Amendment of the United States Constitution as interpreted in **Miller** and **Montgomery**. After granting Foust's petition, the trial court re-sentenced him to serve two consecutive 30 to life sentences for his double homicide convictions.

In affirming Foust's new sentences on appeal, this Court held that "a trial court may not impose a term-of-years sentence, which constitutes a *de facto* LWOP sentence, on a juvenile offender convicted of homicide unless it finds, beyond a reasonable doubt, that he or she is incapable of rehabilitation."

- 6 -

*Foust*, 180 A.3d at 431. Notwithstanding this conclusion, however, we also said that "when considering the constitutionality of a [punishment imposed upon a juvenile homicide defendant under *Miller*, individual] sentences must be considered when determining if [the] juvenile received a *de facto* LWOP sentence." *Id*. at 434. Considering the sentences in this manner, *Foust* held that "[a] sentence of 30 years to life imprisonment does not constitute a *de facto* LWOP sentence which entitles a defendant to the protections of *Miller*." *Id*. at 420 and 438. In view of this binding precedent, Appellant's first two issues merit no relief.

In his third issue, Appellant contends that the trial court failed to undertake an on-the-record consideration of the mitigating factors articulated in *Miller*, and set forth at 42 Pa.C.S.A. § 1102.1(d). According to Appellant, the trial court's failure to address these factors violated his right to an individualized assessment of an appropriate punishment. Citing *Commonwealth v. Machicote*, 206 A.3d 1110 (Pa. 2019), Appellant argues that since he faced a LWOP sentence, he was constitutionally entitled to an on-the-record assessment of the factors identified in *Miller* before his sentence was imposed. Appellant thus concludes that his sentence is unlawful because the trial court failed to provide any insight into how or why the age-related concerns identified in *Miller* factored into the court's sentencing decision.

For the reasons we explain below in rejecting Appellant's challenge to the discretionary aspects of his sentence, we find that the trial court

adequately examined the mitigating, age-related factors in fixing Appellant's punishment. Hence, Appellant's third issue merits no relief.

Appellant's fourth issue asserts that his mandatory maximum sentence of life is illegal because it violates the concept of individualized juvenile sentencing developed in *Miller* and *Montgomery*. *See* Appellant's Brief at 37-39. Our Supreme Court has rejected this contention. In *Batts II*, our Supreme Court held:

> For those defendants for whom the sentencing court determines a [LWOP] sentence is inappropriate, it is our determination here that they are subject to a mandatory maximum sentence of life imprisonment as required by section 1102(a), accompanied by a minimum sentence determined by the common pleas court upon resentencing[.]

*Batts II*, 163 A.3d at 421.[3] Because our Supreme Court has determined that juvenile homicide defendants such as Appellant are subject to a mandatory maximum term of life imprisonment, we reject Appellant's fourth issue on appeal which asserts that his mandatory maximum sentence of life is illegal.

---

[3] As we explained in *Foust*:

> Section 1102 sets forth the mandatory sentence of life in prison for a defendant convicted of first- or second-degree murder. Our Supreme Court did not find that section 1102 is unconstitutional in light of *Miller*. Instead, it found that 61 Pa.C.S.A. § 6137(a)(1) (which prohibits parole for a defendant serving life imprisonment) is unconstitutional when applied to juvenile homicide offenders capable of rehabilitation. *See Batts II*, 163 A.3d at 421. Thus, section 1102 remains applicable to juveniles who were convicted of first- or second-degree murder prior to June 25, 2012.

*Foust*, 180 A.3d at 429 n.14.

In his final challenge to the legality of his sentence, Appellant maintains that the trial court erred to the extent it required him to pay the costs incurred by the prosecution during the resentencing process. This claim has merit. We previously held in similar cases that a defendant cannot be compelled to pay the costs associated with resentencing occasioned by the evolution in constitutional law. *See Commonwealth v. Davis*, 207 A.3d 341, 346 (Pa. Super. 2019) (trial court imposed unlawful sentence by ordering payment of costs relating to resentencing since "prosecution" ends at time of acquittal or conviction and resentencing was necessitated by evolution of constitutional law which later deemed defendant's sentence to be illegal), *appeal granted*, 215 A.3d 968 (Pa. 2019); *Commonwealth v. Lehman*, 201 A.3d 1279 (Pa. Super. 2019) ("We hold that the trial court lacked the authority to order Appellant to pay the costs associated with the resentencing necessitated by evolution of constitutional law."), *appeal granted*, 215 A.3d 967 (Pa. 2019). Because the trial court lacked authority to compel Appellant to pay the costs of resentencing necessitated by evolution of constitutional law, it erred to the extent it did so.

Having concluded that, with the exception of the imposition of costs, Appellant's sentence is lawful, we now consider Appellant's alternate challenges, which assert that the trial court abused its discretion in denying appointment of a mitigation expert and in sentencing Appellant to two consecutive terms of incarceration of 30 years to life. Pursuant to statute,

Appellant does not have an automatic right to appeal the discretionary aspects of his sentence. *See* 42 Pa.C.S.A. § 9781(b). Instead, he must petition this Court for permission to challenge the discretionary aspects of his sentence. *Id.*

> To reach the merits of a discretionary aspects claim,
>
> we must engage in a four part analysis to determine: (1) whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the [S]entencing [C]ode.

*Commonwealth v. Disalvo*, 70 A.3d 900, 902 (Pa. Super. 2013) (citations omitted). Appellant filed a timely notice of appeal and included a Pennsylvania Rule of Appellate Procedure 2119(f) statement in his appellate brief. Although Appellant did not raise his discretionary sentencing claims in a timely post-sentence motion, the record confirms that he raised his claims orally before the court at his resentencing hearing. Hence, Appellant has preserved his discretionary sentencing issues for purposes of appellate review. Accordingly, we examine whether Appellant presents a substantial question and, if so, whether his discretionary challenges have merit.

This Court evaluates the presence of a substantial question on a case-by-case basis. *Commonwealth v. Battles*, 169 A.3d 1086, 1090 (Pa. Super. 2017) (citation omitted). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions

- 10 -

were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Commonwealth v. Grays***, 167 A.3d 793, 816 (Pa. Super. 2017) (citation omitted).

In his Rule 2119(f) statement, Appellant argues that this case presents a substantial question because imposing consecutive sentences for the two murder convictions was clearly unreasonable and results in an excessive sentence. This argument presents a substantial question. ***See Commonwealth v. Dodge***, 77 A.3d 1263, 1270 (Pa. Super. 2013), *appeal denied*, 91 A.3d 161 (Pa. 2014). Accordingly, we proceed to analyze the merits of Appellant's discretionary aspects challenge.

"Sentencing is a matter vested in the sound discretion of the [trial court], and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." ***Commonwealth v. Barnes***, 167 A.3d 110, 122 (Pa. Super. 2017) (*en banc*) (citation omitted). Pursuant to the Sentencing Code,

> the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.

42 Pa.C.S.A. § 9721(b). "The [trial] court is not required to parrot the words of the Sentencing Code, stating every factor that must be considered under Section 9721(b), however, the record as a whole must reflect due consideration by the court of the statutory considerations at the time of

sentencing." ***Commonwealth v. Bullock***, 170 A.3d 1109, 1126 (Pa. Super. 2017) (internal alterations, quotation marks, and citation omitted).

Typically, when sentencing a defendant, the trial court is required to consider the sentencing guidelines. ***Commonwealth v. Melvin***, 172 A.3d 14, 21 (Pa. Super. 2017) (citation omitted). In this case, however, no sentencing guidelines exist for juveniles convicted of first-degree murder prior to June 25, 2012. ***See id***. at 22. Instead, our Supreme Court in ***Batts II*** held that, in these cases, the applicable "sentencing guidelines" that the trial court should consider are the mandatory minimum penalties set forth in section 1102.1. ***See Batts II***, 163 A.3d at 443 n.17.

The trial court offered the following explanation for imposing consecutive 30 to life sentences for Appellant's double homicide convictions.

> In this case, the [trial c]ourt heard testimony from witnesses presented by the Commonwealth who described the impact this crime had on their lives and the lives of others in the community. The [c]ourt also considered evidence offered by [Appellant], including his conduct while incarcerated and the statements he made at the time of the hearing expressing remorse for the crimes he committed as a juvenile. [The court] looked at the Commonwealth's and [Appellant's] exhibits, other relevant documents, court filings, photographs of the victims, and impact statements when crafting a sentence for [Appellant]. Ultimately, [the court] concluded that a sentence of 30 years to life, per victim, is fitting for the crime in this case, and individually, each 30 year sentence does not constitute an unconstitutional *de facto* LWOP sentence.

Trial Court Opinion, 1/29/19, at 8.

In sum, the trial court considered all relevant documents and testimony in fixing Appellant's sentence. After due consideration, the court determined

that sentences of 30 years to life were appropriate under the circumstances and that the sentences should run consecutively since two victims lost their lives in this case.

We perceive no abuse of discretion in this decision. The trial court determined that the nature of Appellant's offenses called for separate punishments, notwithstanding the rehabilitation Appellant demonstrated while imprisoned for the past two decades. Although this Court has previously invalidated lengthy, consecutive term-of-years sentences, we have not extended those cases to include violent offenses, *see Commonwealth v. Coulverson*, 34 A.3d 135, 138–139 (Pa. Super. 2011), but instead confined the reach of those decisions to situations involving property crimes. *See Commonwealth v. Dodge*, 957 A.2d 1198, 1202 (Pa. Super. 2008), *appeal denied*, 980 A.2d 605 (Pa. 2009). We see no reason to alter that practice here.

Finally, we turn briefly to Appellant's claim that the trial court abused its discretion in rejecting the appointment of a mitigation expert or forensic psychiatrist since experts are uniquely suited to opine "on how external influences such as a juvenile's home and family life, neighborhood, peer groups, and exposure to violence and/or substance abuse affected [a] juvenile's development and emotional composition, as well as how [a] juvenile's development compared to other children of his age." Appellant's Brief at 45. This claim merits no relief.

Our Supreme Court has held that the need for expert testimony in considering issues pertinent to a juvenile's criminal culpability is a matter that falls within the discretion of a trial court and is to be determined on a case-by-case basis. **See Batts II**, 163 A.3d at 456. We note here that, in Pennsylvania, the core function of a sentencing court is to ascertain the circumstances that surround the commission of an offense, including the rehabilitative needs of an offender. **See** 42 Pa.C.S.A. § 9721(b). With youthful offenders, this task necessarily includes consideration of domestic factors that influenced the individual, an individual's exposure to violence and drugs, and other common components of the sentencing determination such as impulsivity and maturity. In this case, the record confirms that the court, at the resentencing hearing, heard Appellant's testimony regarding his remorse for his actions, as well as evidence pertaining to the factors that influenced him at the time of the offense and his emotional growth and development during his intervening years in prison. Appellant does not claim that the trial court did not comprehend the evidence placed before it or that the lack of expert testimony deprived the court of specific proof of mitigation. Hence, we are not persuaded that Appellant has shown that the trial court abused its discretion in refusing to enlist the aid of experts in carrying out one of its most basic and commonly recurring duties.

Judgment of sentence affirmed in part and vacated in part. Judgment vacated to the extent it imposes costs of resentencing upon Appellant. Judgment affirmed in all other respects.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/16/2019